IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY EWING,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., PRITZKER, LATOYA HUGHES, ANTHONY WILLS, MOLDENHAUER, DEARMOND, JILL CRANE, MODGLIN, DR. BABICH, CONNIE DOLCE, KELLY PIERCE, JANE DOE #1, and JANE DOE #2,<br><br>Defendants. | Case No. 24-cv-2714-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Jeffrey Ewing, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. On December 27, 2024, Ewing filed his Complaint alleging deliberate indifference in the treatment of his serious medical condition (Doc. 1). On January 29, 2025, Ewing filed an Amended Complaint (Doc. 16) raising Eighth Amendment deliberate indifference claims.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon

1

which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Amended Complaint

On January 31, 2023, Ewing had blood work done in preparation for a colonoscopy (Doc. 16, pp. 6-7). Ewing alleges that Nurse Practitioner ("NP") Moldenhauer ordered the blood test (*Id.* at p. 7). The test revealed high glucose levels indicating diabetes (*Id.*). Specifically, Ewing's glucose, triglycerides, and glucose in his urine were all elevated (*Id.* at p. 6). Ewing alleges that based on the blood results, additional blood tests and follow-ups should have been ordered that would have confirmed a diagnosis of diabetes (*Id.*). Instead, Moldenhauer reviewed the blood results and did nothing further (*Id.*). As Moldenhauer is a nurse practitioner, Ewing alleges that a doctor had to receive, review, and sign the lab report (*Id.*). Dr. Glen Babich, the acting medical director, also reviewed the blood tests and saw the high readings but failed to take action to further diagnose or treat Ewing's condition (*Id.*).

By March 15, 2023, Ewing alleges that he started showing signs of diabetes (Doc. 16, p. 8). He lost over 30 pounds (*Id.*). On March 12, 2023, he saw Jane Doe Nurse, but she did not explain his elevated blood levels (*Id.*). On March 15, 2023, he also saw NP Dearmond, but she also did not explain his blood test results to him (*Id.*). After visiting Dearmond, Ewing began to suffer from headaches, dehydration, cramping, constipation, dizziness, and excessive urination (*Id.*). He put in sick call requests and spoke to several nurses. He was told that he would be put in for a sick call but due to

understaffing in the healthcare unit, the nurses indicated that they did not know when he would be called (*Id.*).

On March 23, 2023, Ewing's family called the Director of Nurses, Connie Dolce, and informed her that Ewing was not feeling well after his colonoscopy (Doc. 16, p. 8). She informed them that Ewing would be put on the list for a sick call. Ewing alleges that family members spoke to Dolce on March 23, 2023, and April 13, 2023, and she assured them that he was being seen by medical staff (*Id.* at p. 12). Ewing alleges that sick calls are supposed to be completed daily and should take place within three days of an inmate request (*Id.* at p. 9). Ewing maintains that due to the understaffing by Wexford in order to save money, there were not enough staff members to complete timely sick calls (*Id.*). As a result, Ewing alleges he was not seen by medical staff until March 28, 2023, when Jane Doe #2 took him for an EKG (*Id.*). He informed the nurse that he was not feeling well after his colonoscopy, and she told him to put in a sick call for his issues (*Id.*).

Ewing alleges that due to delays in receiving care, he lost 53 pounds (Doc. 16, p. 9). During this time, Ewing worked as a law library clerk, and he submitted sick call slips while at work (*Id.*). NP Dearmond met with Ewing and took vitals, blood, and urine (*Id.*). She noted that his A1C was high, another sign of diabetes, but she did nothing further for his condition or symptoms (*Id.*). Ewing also spoke to several correctional officers who attempted to take Ewing to the healthcare unit on several occasions to obtain care for his symptoms (*Id.* at p. 10). But the healthcare unit officials turned them away and denied him medical care (*Id.*). On March 22, 2023, Dr. Babich, Dearmond, and Moldenhauer ordered a blood test to diagnose diabetes (*Id.* at p. 12). According to Ewing, an individual

3

is considered diabetic if the level is 6.5 or above; he alleges that his levels were 12.9 (*Id*.). Nonetheless, he still faced delays in obtaining medication (*Id*.).

On April 2, 2023, Ewing finally saw NP Moldenhauer, who noted that Ewing had lost a significant amount of weight (Doc. 16, p. 10). Moldenhauer ordered additional testing but did not order any medical treatment at that time, despite the earlier high test results indicating diabetes (*Id*. at pp. 10-11). Ewing alleges that all medical personnel ignored the obvious signs of diabetes (*Id*. at p. 11).

Finally, on April 14, 2023, Ewing received medication for his diabetes, including insulin with a sliding scale and metformin (Doc. 16, p. 11). Ewing alleges that even the medication was delayed because his labs were taken on April 4, 2023, and reported on April 8, 2023, but NP Jill Crane failed to read the labs until April 13, 2023 (*Id*.).

Despite receiving medication for his diabetes, Ewing alleges that officials have still not provided him with proper food to keep his levels in check (Doc. 16, p. 16). He alleges that he was diagnosed with diabetes mellitus which means that he produces some insulin but must keep track of his levels and the foods he eats. He alleges that this is difficult due to the number of sugary and starchy foods served at the prison (*Id*.). Ewing believes he needs to be sent to a specialist to evaluate his diet, but Dearmond, Crane, Moldenhauer, and Dr. Babich refuse to send him to a specialist (*Id*.). He acknowledges being placed on the diet tray at the prison, but the diet tray also contains starchy foods (*Id*. at p. 17). He alleges that he spoke to Dearmond, Crane, Moldenhauer, and Dr. Babich about his diet, but they told him they could not do anything more for him (*Id*. at pp. 17-18).

Ewing alleges that the delays in his diagnosis and receipt of medications were caused by Wexford Health Sources, Inc.'s practice of understaffing the healthcare unit (Doc. 16, p. 13). He alleges that this practice was part of a cost saving policy by the company. The understaffing led to delays in Ewing's diagnosis because staff did not see his extreme weight loss and failed to review his initial lab tests (*Id*. at p. 5, 13). He also alleges that there were fewer nurses to monitor his symptoms (*Id*.). He alleges the nurses and nurse practitioners were overworked and overwhelmed, leading to the failure to adequately diagnose him or order more tests in light of his earlier lab results (*Id*.). Also as a result of the understaffing, the prison does not have a nutritionist on staff to ensure Ewing is receiving adequate meals for his condition (*Id*. at p. 17). He alleges that he was refused a referral to a specialist as part of a policy designed to save costs (*Id*. at p. 17)

Ewing alleges that he wrote grievances about his deteriorating medical condition, but Nurse Modglin responded to the grievance stating that on March 22, 2023, his A1C was high and he was receiving medication (Doc. 16, p. 13). Ewing alleges that this response was false because he did not receive medication until April. Grievance officer Kelly Pierce used the information from Modglin to deny his grievance (*Id*. at p. 14). Warden Wills deemed the grievance an emergency but relied on Modglin's statements to rule on the grievance (*Id*. at pp. 14-15). He also alleges that Connie Dolce relied on statements from Modglin when speaking to Ewing's family (*Id*. at p. 15). He also alleges that Wills, as warden, and director Latoya Hughes have an obligation to ensure adequate medical care is being received by inmates and that the healthcare unit is adequately

staffed and trained (*Id*. at p. 18). He believes they were put on notice of the deficiencies in the healthcare at Menard due to a previous class action lawsuit (*Id*. at pp. 18-20).

## Preliminary Dismissals

As an initial matter, Ewing fails to state a claim against Governor Pritzker, Director Latoya Hughes, and Warden Anthony Wills. Although Ewing identifies Pritzker in the case caption, he fails to allege that Pritzker was involved in his care, and he does not appear to mention Pritzker in his statement of claim. Nor can any of these officials, including the warden, director, or governor, be liable simply because of their high-ranking positions because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). *See also Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). There are also no allegations to suggest that either Hughes or Wills had any personal knowledge of Ewing's medical condition or his needs. Further, neither Wills nor Hughes can be liable for denying his grievances, because the denial or mishandling of a grievance does not amount to deliberate indifference. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008).

Grievance officer Kelly Pierce and Nurse Modglin also cannot be liable for simply responding to Ewing's grievance. Although Ewing alleges that Modglin lied about the status of his medical care, there are simply no allegations to suggest Modglin actually participated in his care. Ewing simply alleges that she responded to his grievance. He also only alleges that Connie Dolce relayed information she received about Ewing's medical care to his family. Because none of these individuals actually provided care to

Ewing or were aware of his additional need for care, Ewing fails to state a claim against them.

Finally, Ewing fails to state a claim against Jane Doe #1 and Jane Doe #2. Ewing alleges that Jane Doe #1 saw him on March 12, 2023, and failed to explain his earlier test results to him (Doc. 16, p. 8). But he also acknowledges that an A1C test was ordered for him on March 15, 2023, shortly after his appointment with the nurse (*Id*. at p. 11). Further, Ewing fails to include allegations indicating the nature of his meeting with the nurse, what care she provided, and what conditions were discussed. His allegations against Jane Doe #1 do not rise to the level of deliberate indifference.

Similarly, Ewing alleges that he spoke with Jane Doe Nurse #2 on March 28, 2023, while she escorted Ewing to an EKG (Doc. 16, p. 9). He told her he was not feeling well and she told him to put in a sick call request (*Id*.). Shortly thereafter, Ewing saw both Dearmond and Moldenhauer (*Id*. at pp. 9-10). These allegations do not suggest deliberate indifference on the part of Jane Doe #2.

Thus, any potential claims against Pritzker, Latoya Hughes, Anthony Wills, Nurse Modglin, Kelly Pierce, Connie Dolce, Jane Doe #1, and Jane Doe #2 are **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Amended Complaint, the Court designates the following counts:

> **Count 1:**   **Eighth Amendment deliberate indifference claim against NP Moldenhauer, NP Dearmond, NP Jill Crane, and Dr. Babich for denying and delaying care for Ewing including**

> delaying testing, failing to diagnose Ewing with diabetes, failing to properly treat his condition, and failing to send him to specialists.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having a cost-saving policy and practice of understaffing the healthcare unit and denying referrals to specialists, which led to delays in, and inadequate care for, treating Ewing's condition.
>
> **Count 3:** Illinois state law claim for intentional infliction of emotional distress.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Ewing states a viable claim for deliberate indifference against Moldenhauer, Dearmond, Crane, and Dr. Babich. He alleges that the medical providers were aware of his prior test results but continued to delay and deny him care for several months. He further alleges that after his diagnosis, there were delays in receiving his medications, he never received a proper diet for his condition, and the providers refused to send him out to a specialist. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

in treatment). Count 1 shall proceed against Moldenhauer, Dearmond, Crane, and Dr. Babich.

Ewing also states a claim against Wexford Health Sources, Inc. for the policies and practices that led to delays in his care. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Thus, Count 2 shall proceed against Wexford Health Sources, Inc.

But Ewing fails to state a claim for intentional infliction of emotional distress under Illinois law. In order to state a claim, a plaintiff must allege that the defendants acted in an extreme and outrageous way, intending to inflict severe emotional distress or knowing there was a high probability that would occur, and that their actions in fact caused severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). But here, Ewing merely alleges that Defendants ordered tests and then ignored the results (Doc. 16, p. 21). There are no allegations to suggest that their actions were extreme or that they intended to cause emotional distress. Thus, Ewing fails to state a claim in Count 3.

## **Motion for Counsel**

Ewing also filed a motion for counsel (Doc. 7). He seeks counsel because there have been delays in his mail and getting a pass to the law library. He also had help from another inmate in filing his pleading and his medications interfere with his ability to represent himself. But given the early stage of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706

9

F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Further, there is nothing currently pending that would require counsel. Once Defendants have been served and file their Answers, the Court will enter a scheduling order setting forth the next steps in the litigation process. If Ewing experiences difficulties in litigating the case at that point, he may submit another request for counsel. At this time, his motion is **DENIED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Moldenhauer, Dearmond, Crane, and Dr. Babich. Count 2 shall proceed against Wexford Health Sources, Inc. Count 3 and all potential claims against Pritzker, Latoya Hughes, Anthony Wills, Nurse Modglin, Kelly Pierce, Connie Dolce, Jane Doe #1, and Jane Doe #2 are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Moldenhauer, Dearmond, Crane, Dr. Babich, and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Ewing. If a defendant fails to sign and return the Waiver of Service of Summons (Form

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Ewing, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

**Because Ewing's claims involve his medical care, the Clerk of Court is DIRECTED to enter the Court's standard HIPAA Qualified Protective Order**.

If judgment is rendered against Ewing, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Ewing is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court

will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  April 24, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**